### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRYANT WILSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:22cv1619 (SVN) |
| | : | |
| ANGEL QUIROS, | : | |
| et al., | : | |
| Defendants. | : | May 10, 2023 |

### <u>INITIAL REVIEW ORDER</u>

Plaintiff Bryant Wilson, an inmate housed at Corrigan Correctional Center in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint *pro se* under 42 U.S.C. § 1983.[1]   Compl., ECF No. 1.   Plaintiff asserts violations of his rights under the United States Constitution against DOC Commissioner Angel Quiros and two correctional staff members who work at MacDougall-Walker Correctional Institution, where Plaintiff is currently housed: Property Officer Robledo and Correctional Officer John Doe.   *Id.* at 1-3.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.   28 U.S.C. § 1915A(a).   Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function using Plaintiff's inmate number, 392603, shows that Plaintiff was sentenced to a term of twenty years on December 12, 2016. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=392603.

I.   **FACTUAL ALLEGATIONS**

The Court does not include herein all of the allegations from the complaint but summarizes the facts to provide context for this initial review.

Plaintiff alleges that his property, including his legal communications and materials, were lost or destroyed when he and his cellmate were sent to the Restricted Housing Unit ("RHU"). While Plaintiff was in the RHU, Defendant Doe had him sign a property inventory form and informed him that his property was mixed up with his cellmate's property.   In order to induce Plaintiff to sign the form, Doe stated that the property would be sorted out when Plaintiff and his cellmate left the RHU.

On May 11, 2021, Plaintiff was released from the RHU and tried to retrieve his property. At this time, he learned that it had been sent to Osborn Correctional Institution ("Osborn") with his cellmate when his cellmate was transferred there.   Plaintiff informed Defendant Robledo that he needed his missing property as soon as possible for his ongoing legal cases.   On May 18, 2021, Plaintiff filed a grievance about his lost property.

On May 21, 2021, Defendant Robledo sent him two boxes of his property from Osborn, but his legal communications and materials, five bags of commissary, and clothing were missing. Plaintiff later sent several lost property forms to Defendant Robledo between June and September of 2021.

In August of 2021, Plaintiff decided to settle one of his pending civil cases because he could not provide his attorney with certain evidentiary documents that had been lost by DOC.

In September of 2021, Defendant Robledo told Plaintiff to stop writing about his property and that he would not get any legal material.   He explained that Plaintiff had made the "wrong people" mad by filing a lawsuit against other DOC employees and that his legal mail had been

2

read and thrown out.   He advised Plaintiff not to file any more lawsuits.

## II.     PRELIMINARY MATTERS

Plaintiff has asserted claims alleging violations of his First, Fourth, and Sixth Amendment rights against the Defendants in both their individual and official capacities.   Before examining whether any of these claims can proceed past initial review, the Court considers the availability of the relief sought by Plaintiff and the capacities in which he has sued the various Defendants, as well as allegations related to the personal involvement of Defendants.

### A.   Official Capacity Claims

Through this action, Plaintiff seeks only to recover monetary damages against the Defendants for past violations of his constitutional rights.   Nevertheless, he has brought claims against all three Defendants in their official capacities.   It is well settled, however, that any claims based on constitutional violations for money damages against Defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment.   *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   Thus, all claims brought by Plaintiff against Defendants in their official capacities are DISMISSED.[2]

### B.   Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.   *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").   This is true

---

[2] In his complaint, Plaintiff alleges claims against Defendant Quiros only in his official capacity.   *See* Compl. ¶ 2. Because Plaintiff has alleged only claims for money damages, however, and because the Court must interpret the pleadings of *pro se* litigants to raise the strongest arguments they suggest, *see Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam), the Court will assume that Plaintiff also intended to bring claims against Defendant Quiros in his individual capacity for money damages.

with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). Such a claim cannot be maintained based on purported inaction by a Defendant absent allegations that Defendant was actually aware his inaction would cause a substantial risk of harm to Plaintiff. *See Johnson v. Cook*, No. 3:19-CV-1464 (CSH), 2021 WL 2741723, at *18 (D. Conn. July 1, 2021). Here, other than a single allegation that Defendant Quiros did nothing in response to Plaintiff's complaints of lost property, which allegedly caused Plaintiff harm, Plaintiff has failed to allege any facts related to the personal involvement of Defendant Quiros in any alleged constitutional violation. This single conclusory allegation is not enough to state a claim; thus, Plaintiff's claims against Defendant Quiros are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## III.  FOURTH AMENDMENT VIOLATION

Plaintiff alleges that Defendants Doe and Robledo violated his Fourth Amendment rights by monitoring, reading, and destroying his legal communications and materials.

The Fourth Amendment protects against unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347, 353 (1967). It protects a person's actual or subjective expectation of privacy when that expectation is one that society recognizes as reasonable. *Id.* at 361.

Here, Plaintiff alleges violations of his Fourth Amendment right based on Defendants confiscation, and refusal to return, legal correspondence. Initially, the Second Circuit has held that "interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Therefore, Plaintiff's claim is likely more properly brought as a claim for violation of the First and Fourteenth Amendments.

Nevertheless, the Second Circuit has also recognized in the criminal context that, whether legal or otherwise, unless "prison officials had 'good' or 'reasonable' cause to inspect" an inmate's mail, doing so could violate an inmate's First or Fourth Amendment rights.  *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998).   As Plaintiff's complaint does not state that Defendants had any good or reasonable cause to confiscate his mail, he has, for purposes of initial review, adequately stated a Fourth Amendment claim against Defendants Doe and Robledo.  *See Rasheen v. Adner*, 356 F. Supp. 3d 222, 233 (N.D.N.Y. 2019) (allowing Fourth Amendment claim involving interception of prisoner's outgoing mail to survive initial review).

## IV.   SIXTH AMENDMENT

Plaintiff asserts that the deprivation of his legal mail interfered with his right to effective counsel.   The Sixth Amendment right to effective counsel "only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." *Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555-57 (1987)).   Plaintiff has not alleged that he was prevented from meeting with his attorney or had any legal mail intercepted regarding his criminal case or first appeal.   Indeed, Plaintiff's allegations refer to a settlement in a civil case.   Accordingly, Plaintiff's Sixth Amendment claim against Defendants Doe and Roblado is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## V.   ACCESS TO THE COURTS

A prisoner has a constitutional right to meaningful access to the courts.  *Bounds v. Smith*,

430 U.S. 817, 822 (1977).[3]  To state a claim for denial of access to the courts, a plaintiff must allege that the defendant's conduct "hindered" his efforts to pursue a legal claim.  *Davis,* 320 F.3d at 351.  A plausible claim of hindering access to the courts requires Plaintiff to show an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-2 (1996).  Plaintiff alleges that he had to settle a prior civil rights action due to his loss of legal mail and materials.  For initial review purposes, this adequately states a claim, and the Court will permit Plaintiff to proceed on his claim of unconstitutional deprivation of his right to court access against Defendants Doe and Robledo.

## VI.     FIRST AMENDMENT LEGAL MAIL INTERFERENCE

Plaintiff's right to receive legal mail is also protected by the First Amendment.   Under the First Amendment, restrictions on prisoners' mail are justified only if they "further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Davis*, 320 F.3d at 351.  "[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail." *Id.*  For initial review purposes, Plaintiff's allegations sufficiently allege interference with his legal mail without a legitimate governmental interest. Accordingly, Plaintiff may proceed on his First Amendment claim for interference with legal mail against Defendants Doe and Robledo.

## VII.    FIRST AMENDMENT RETALIATION

To plead a First Amendment retaliation claim, a plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against

---

[3] The right of access to the courts is grounded in numerous provisions of the Constitution including the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

[him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20cv1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020). For purposes of initial review, Plaintiff's allegations suffice to state a claim that Defendant Robledo deprived him of his legal mail and materials as retaliation for filing a grievance. Thus, Plaintiff may proceed on his First Amendment retaliation claim against Defendant Robledo.

Plaintiff's complaint contains no allegations indicating that Defendant Doe took any retaliatory actions against Plaintiff. Therefore, Plaintiff's claim for First Amendment retaliation against Defendant Doe is dismissed.

## III.   ORDERS

 For the foregoing reasons, the court enters the following orders:

The case shall proceed on Plaintiff's individual capacity claims for damages for:

1)    Fourth Amendment violation of his privacy interest in his legal communications and materials against Correction Officer Doe and Property Officer Robledo;

2)    Violation of his constitutional right to access of the courts against Defendants Doe and Robledo;

3)    First Amendment violation for interference with his legal communications against

Defendants Doe and Robledo.

    4)      First Amendment retaliation against Defendant Robledo.

Plaintiff's claims against Commissioner Quiros are DISMISSED. All other claims are DISMISSED.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

    1)      If Plaintiff wishes to proceed on the claims set forth in items one through four immediately above against Correction Officer Doe and Property Officer Robledo, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before June 9, 2023, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendant Robledo in his individual capacity.

    2)      Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed, in order to attempt to state a viable claim, he may file an amended complaint by June 9, 2023. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an Amended Complaint, the original complaint this IRO addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by June 9, 2023, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Doe Defendant.**   The Court advises Plaintiff that the Clerk cannot serve the complaint on Correction Officer Doe because Plaintiff has not provided the first or last name for this defendant. Plaintiff will have **ninety (90) days** from the date of service to file a notice identifying Defendant Correction Officer Doe by his or her first name and last name. Plaintiff may determine Correction Officer Doe's identity by reviewing his materials and through the discovery process.   The Court will dismiss the claims against Correction Officer Doe defendant if Plaintiff fails to provide a first and last name within the time specified herein. *See* Fed. R. Civ. P. 4(m).

**Changes of Address.**   If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.   Failure to do so can result in the dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

   **SO ORDERED** at Hartford, Connecticut, this 10th day of May, 2023.


       */s/ Sarala V. Nagala*
     SARALA V. NAGALA
     UNITED STATES DISTRICT JUDGE

9