## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRYANT WILSON, | : | 3:22-cv-1619 (SVN) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| ANGEL QUIROS, et al., | : | |
| *Defendants*. | : | March 20, 2025 |

## <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Bryant Wilson, proceeding *pro se*, brought this civil rights action for damages for violation of his constitutional rights against Connecticut Department of Correction ("DOC") Correctional Officers Koza (formerly Doe) and Edgar Robledo in their individual capacities. Compl., ECF No. 1. The Court concluded Plaintiff had sufficiently alleged the following claims, for initial review purposes: (1) a Fourth Amendment claim for violation of his privacy interest in his legal communications and materials against Defendants Koza and Robledo; (2) a First Amendment claim for violation of his right to access of the courts against Defendants Koza and Robledo; (3) a First Amendment claim for interference with his legal mail against Defendants Koza and Robledo; and (4) a First Amendment retaliation claim against Defendant Robledo. *See* Initial Review Order ("IRO"), ECF No. 11, at 7–8.

Defendants have moved for summary judgment, arguing that Plaintiff has not exhausted available administrative remedies; that he has not demonstrated any constitutional violations; and that Defendants are entitled to qualified immunity. ECF No. 36. Plaintiff opposes Defendants' motion. Because the Court concludes Plaintiff has not exhausted available administrative remedies, Defendants' motion is **GRANTED.**

## I.    FACTUAL BACKGROUND[1]

The following factual background reflects the Court's review of the complaint,[2] Defendants' Local Rule 56(a) statement of facts and all supporting materials.[3]  *See* Compl., ECF No. 1 & ECF No. 1-1; IRO, ECF No. 11; Defs.' Local Rule ("L.R.") 56(a)1 St., ECF No. 36-2.

### A.  Plaintiff's Complaint

The Court briefly recounts the factual allegations underlying Plaintiff's claims in this action.   Plaintiff alleges that his property, including his legal communications and materials, were lost or destroyed when he and his cellmate were sent to the Restrictive Housing Unit ("RHU").  IRO at 2.   While Plaintiff was in the RHU, Defendant Koza had him sign a property inventory form and informed him that his property was mixed up with his cellmate's property.   *Id.* at 2.   To induce Plaintiff to sign the form, Koza stated that the property would be sorted out when Plaintiff and his cellmate left the RHU.   *Id.*

---

[1] Generally, the Court cites only to the relevant paragraph in the Local Rule 56(a)1 Statement where a fact is not disputed.   The page numbers cited to in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

[2] *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

[3] Defendants provided Plaintiff a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice to *Pro Se Litigant*, ECF No. 36-3.   Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."   Local Rule 56(a)3 provides that "each denial in an opponent's Local Rule 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Plaintiff has filed a document entitled "Statement of Facts," which appears to be his own firsthand recollection of events, and a "Statement of Disputed Factual Issues," but neither conforms to the requirements of Local Rule 56(a)2, such that it can be characterized as a response to Defendants' Local Rule 56(a)1 Statement.   *See* St. of Facts, ECF No. 39-2; Pl.'s St. of Disputed Factual Issues, ECF No. 39 at 35–37.   (Certain pages in Plaintiff's filing appear in reverse order in the version uploaded to ECF.)   As Plaintiff has not filed a statement of facts in compliance with the requirements of Local Rule 56(a), the Court deems Defendants' statements to be admitted if supported by the evidence. *Wooding v. City of Hartford*, No. 3:22-CV-617 (SVN), 2024 WL 4349049, at *1 (D. Conn. Sept. 30, 2024).

After he was released from RHU on May 11, 2021, Plaintiff tried to retrieve his property and learned that it had been sent to Osborn Correctional Institution with his cellmate when his cellmate was transferred there. *Id.* Plaintiff informed Defendant Robledo that he needed his missing property as soon as possible for his ongoing legal cases. *Id.* Defendant Robledo sent Plaintiff two boxes of his property from Osborn, but Plaintiff's legal communications and materials, five bags of commissary, and clothing were missing. *Id.* Plaintiff alleges he later sent several lost property forms to Defendant Robledo between June and September 2021. *Id.*

In August of 2021, Plaintiff decided to settle one of his pending civil cases because he could not provide his attorney with certain evidentiary documents that had been lost by DOC. *Id.*

In September of 2021, Defendant Robledo told Plaintiff to stop writing about his property and that he would not get any legal material. *Id.* He explained that Plaintiff had made the "wrong people" mad by filing a lawsuit against other DOC employees and that his legal mail had been read and thrown out. *Id.* at 2–3. He advised Plaintiff not to file any more lawsuits. *Id.* at 3.

B.  Undisputed Facts

All facts are undisputed unless otherwise indicated.

At the time relevant to his claims in this action, Plaintiff was housed at MacDougall-Walker Institution ("MacDougall"), where he was incarcerated from August 17, 2017, to October 5, 2022. Defs.' L.R. 56(a)1 St., ¶ 2. At all relevant times, Defendant Robledo served as the MacDougall Second Shift Property Officer, overseeing the handling of inmate property in accordance with DOC Administrative Directive 6.10. *Id.* ¶ 3. At all relevant times, Defendant Koza served as a Correctional Officer at MacDougall until his promotion to Lieutenant on June 3, 2022. *Id.* ¶ 4.

As the Second Shift Property Officer, Defendant Robledo is responsible for packing, inventorying, and storing an inmate's property at MacDougall during the second shift, which starts

at 2:00 p.m.  *Id.* ¶ 9.   If an incident such as a fight ensues, however, a lieutenant will assign other correctional officers to pack, inventory, and complete a property inventory form for the inmate's signature.   *Id.*   Defendant Robledo is not responsible for property investigations or mail distributions.   *Id.*

On April 29, 2021, Defendant Koza was directed by the main control unit at MacDougall to report to a particular pod for a code that involved a physical altercation between Plaintiff and his former cellmate.   *Id.* ¶ 10.   After he arrived at the pod, Defendant Koza was ordered to pack and inventory Plaintiff's belongings for storage, while Plaintiff and his former cellmate were transferred to the RHU.   *Id.* ¶ 11.

Defendant Koza packed all items with Plaintiff's identifying information into boxes; he also packed unlabeled items that were near those items identified as belonging to Plaintiff.   *Id.* ¶ 12.   Defendant Koza completed a property inventory form and presented it to Plaintiff for his signature.   *Id.* ¶¶ 12, 13.   While signing the form, Plaintiff alerted Defendant Koza there was a mix-up with his cellmate's property and that some items were missing.   *Id.* ¶¶ 13, 14.   Defendant Koza requested that Plaintiff indicate what property was missing and continue signing the form, on the premise that the issues would be sorted out upon his and his former cellmate's release from RHU.   *Id.* ¶ 14.

After Plaintiff signed the inventory form and made his notations about the missing property, Defendant Koza delivered Plaintiff's property to the property office, where the First Shift Property Officer observed the signed inventory form and placed Plaintiff's property into boxes with his identifying information for storage.   *Id.* ¶ 15.   Plaintiff and Defendant Koza had no further interactions.   *Id.* ¶ 16.   As the Second Shift Property Officer, Defendant Robledo did not

observe Plaintiff's signed inventory form or store Plaintiff's property in boxes labeled with his identifying information. *Id.* ¶ 15.

On May 11, 2021, Plaintiff was released from the RHU and went to the property office to collect his items. *Id.* ¶ 17. Defendant Robledo provided Plaintiff with what he believed to be Plaintiff's boxed property and a corresponding inventory form minus an altered coaxial cable and one pillow. *Id.*

After he received the boxed property, Plaintiff informed Defendant Robledo that his boxed property was incorrect and was mixed up with his former cellmate's property. *Id.* ¶ 18. His former cellmate was now housed at Osborn Correctional Institution ("Osborn"). *Id.* Defendant Robledo requested that Plaintiff sort through the property and provide him with a list of specific missing items. *Id.* ¶ 19.

On May 14, 2021, Plaintiff reported to Defendant Robledo that he was missing two boxes of legal documents, three pairs of sneakers, two bags of clothes, and more than $500 worth of commissary items. *Id.* ¶ 20. Officer Robledo then sent an email to staff at Osborn, requesting that Plaintiff's former cellmate's property be rechecked for Plaintiff's missing items. *Id.* ¶ 21.

On May 21, 2021,[4] Officer Robledo received two bags of property from Osborn for Plaintiff. *Id.* ¶ 22. After Plaintiff received the two property bags, he indicated that he was still missing items. *Id.* ¶ 24. Defendant Robledo advised Plaintiff to file a "Lost/Damaged Property" form. *Id.* ¶ 25. Defendant Robledo states he had no further involvement with Plaintiff after May 21, 2021. *Id.* ¶ 26.

---

[4] While Defendants' Rule 56(a)1 Statement uses the date of May 21, 2024, the Court believes this is a typographical error, as Defendant Robledo's declaration uses a date of May 21, 2021, and all relevant events appear to have occurred in 2021. *See* Robledo Decl., ECF No. 36-4, ¶ 20. The Court thus assumes the proper date is May 21, 2021.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."   A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   *Id.* at 323.   A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.   It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"   *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).   The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor.   *Anderson*, 477 U.S. at 249.   If the non-movant fails "to make a sufficient showing on an essential element of [their]

case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "[O]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

## III.    DISCUSSION

The Court grants Defendants' motion for summary judgment because it is undisputed that Plaintiff did not exhaust available administrative remedies as to any of his claims, and there are no genuine issues of fact regarding whether the Court should excuse his failure to exhaust.

### A.    Prison Litigation Reform Act ("PLRA")

The PLRA mandates that incarcerated plaintiffs exhaust all administrative remedies available to them before filing a claim under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning that plaintiffs must exhaust all available remedies in "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The exhaustion requirement serves "two main purposes." *Id.* at 89. First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the

programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.* (cleaned up). Second, exhaustion promotes efficiency because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (citation and internal quotation marks omitted); *see also Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020) (summary order) (citing *Espinal v. Goord*, 558 F.3d 119, 127–28 (2d Cir. 2009); *Johnson v. Testman*, 380 F. 3d. 691, 697 (2d Cir. 2004)). If a plaintiff does not provide such description or notice, correctional officials are not afforded the "opportunity to address complaints internally," which Congress has required before a plaintiff can pursue a federal case. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). As the United States Supreme Court explained in *Woodford*:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

548 U.S. at 90 (citation and internal quotation marks omitted) (emphasis in original).

The exhaustion requirement may be excused only when the administrative remedy is not available in practice, even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). An inmate is required "to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*

*v. Churner*, 532 U.S. 731, 738 (2001)).  The Supreme Court described three non-exhaustive circumstances in which an administrative procedure is considered unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 643–44.  "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements."  *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Because failure to exhaust administrative remedies is an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), Defendants bear the burden of proving "that a grievance process exists and applies to the underlying dispute."  *Hubbs*, 788 F.3d at 59.  If Defendants meet this burden, "administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact."  *Id.*; *see also Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2023 WL 184238, at *6 (D. Conn. Jan. 13, 2023).

### B.  Administrative Directive 9.6

The general administrative grievance procedure for the DOC is set forth in Administrative Directive ("A.D.") 9.6.  *See* Defs.' Ex. C-1, ECF No. 36-6 (current version of Directive 9.6, which was in effect at the time Plaintiff filed this action).  Broadly, inmates must first seek to resolve the matter informally before seeking to resolve it through a formal grievance and, as needed, appellate grievance process.

A.D. 9.6 sets forth the following grievance procedures. First, inmates are required to attempt to resolve the matter informally, including by verbal communication. *See* A.D. 9.6(6)(a)(i)(1)–(2). If the attempts to resolve the matter verbally are not effective or if the inmate chooses not to resolve the issue verbally, the inmate can make a written request for informal resolution by sending a CN 9601 Inmate Request Form to the appropriate staff member. A.D. 9.6(6)(a)(i)(2)(a), (3). The written form is required to "clearly state the problem and the action requested to remedy the issue." A.D. 9.6(6)(a)(i)(4)(a). Correctional staff are required to respond to a written request form within fifteen business days of receipt. A.D. 9.6(6)(a)(i)(8).

If the inmate is not satisfied with the informal resolution offered, he can begin the formal grievance process. First, the inmate files a Level 1 grievance. A.D. 9.6(6)(a)(ii)(1) & (2). The Level 1 grievance is required to be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance. A.D. 9.6(6)(a)(ii)(4). When filing a Level 1 grievance, inmates are directed to attach any relevant documents and a copy of the response to the inmate's written request to resolve the matter informally or an explanation for why the response is not attached. A.D. 9.6(6)(a)(ii)(2)–(3). The Unit Administrator must respond in writing to the Level 1 grievance within thirty business days of receipt of the grievance. A.D. 9.6(6)(b)(i)(1), (3). The Level 1 grievance can be rejected, denied, upheld in part, upheld, or withrawn. A.D. 9.6(5)(n)(i); *see also* A.D. 9.6(3)(d), (h)–(k) (defining each possible Level 1 grievance outcome). If an administrative remedy is rejected for non-compliance with a procedural requirement, the inmate shall have five calendar days to correct the defect and resubmit the administrative remedy request. A.D. 9.6(6)(b)(i)(2)(a)(i)(1). But if the resubmitted request for administrative remedy does not correct the defect, the administrative remedy request will be rejected and is not subject to further appeal. A.D. 9.6(6)(b)(i)(2)(a)(i)(2).

If an inmate disagrees with the Unit Administrator's disposition of his or her Level 1 grievance or if the Unit Administrator's failure to dispose of the grievance in a timely manner, the inmate can file a Level 2 appeal. *See* A.D. 9.6(6)(b)(ii). A Level 2 appeal must be filed within five calendar days of the inmate's receipt of the decision on the Level 1 grievance. *See* A.D. 9.6(6)(b)(ii)(1). If an inmate seeks to appeal the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner or failure to respond, he must do so within sixty-five days of the date the Level 1 grievance was documented in the Administrative Remedies Log. A.D. 9.6(6)(b)(ii)(2). For inmates confined in Connecticut correctional facilities, Level 2 appeals are reviewed by the appropriate District Administrator. A.D. 9.6(6)(b)(ii)(3)(a). The District Administrator must respond to the Level 2 appeal within thirty business days of receipt. A.D. 9.6(6)(b)(ii)(4).

Level 3 reviews are restricted to Level 2 decisions that challenge department policy or the integrity of the grievance procedure, and Level 2 appeals to which the District Administrator has failed to timely respond. *See* A.D. 9.6(6)(b)(iii)(1). A Level 3 appeal is required to be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal or, if the inmate did not receive a response to his Level 2 appeal, within 65 calendar days of the filing of the Level 2 appeal. *See* A.D. 9.6(6)(b)(iii)(2). Level 3 appeals are reviewed by the Commissioner of the DOC or his designee. *See* A.D. 9.6(6)(b)(iii)(3).

### C. Property Claims

Directives 9.6 and 6.10 set forth the remedy procedure specific to an inmate's claims of property loss or damage. A.D. 9.6(9); Defs.' Ex. A-1, ECF No. 36-4 (Administrative Directive 6.10). "If an inmate contends the Department is responsible for the loss of or damage to, any of the inmate's personal property," the inmate must follow the "Property Claims procedure" set forth

in A.D. 9.6(9).   A.D. 9.6(9)(b); A.D. 6.10(37).   An inmate must file a property claim "within one

(1) year of when the inmate knew or should have known of the loss or damage."   A.D. 9.6(9)(b).

An inmate with a property claim must:

> complete and deposit CN 9610, Lost/Damaged Property Investigation Form, in the Administrative Remedies box.   Form CN 9610, Lost/Damaged Property Investigation Form, shall be available in all housing units. The inmate shall attach CN 9601, Inmate Request Form, to CN 9610, Lost/Damaged Property Investigation Form, indicating that the inmate has attempted to resolve the property issue informally in accordance with Administrative Directive 6.10, Inmate Property.

A.D. 9.6(9)(b)(i).   If the property issue is resolved informally, the inmate must submit a CN 9611

form to withdraw the request for investigation.   *Id.*

If the issue remains unresolved after submission of the Lost/Damaged Property

Investigation form (CN9610), the inmate may elect to continue pursuing resolution by completing

a Property Claim form (CN 9612).   A.D. 9.6(9)(b)(ii); *see also* A.D. 6.10(37).   The inmate must

"mail the completed and notarized CN 9612, Property Claim form, along with any related

documents, to . . . the Lost Property Board" at the address provided in the Administrative Directive.

A.D. 9.6(9)(b)(iii).   The DOC Lost Property Board hears and determines claims from inmates in

correctional facilities seeking compensation for lost or damaged personal property of $3,500 or

less.   A.D. 9.6(9).[5]

If the Lost Property Board denies a claim in whole or in part, the inmate may present the

claim to the Office of the Claims Commissioner by mailing the same Property Claim form and any

relevant documents to the that Office.   A.D. 9.6(9)(f).

---

[5] Property claims exceeding $3,500 or property claims filed by inmates not in a Connecticut correctional facility must be filed with the State Claims Commissioner. A.D. 9.6(9).

D. Plaintiff's Grievances

In support of their motion for summary judgment, Defendants have submitted the declaration of Morrell Walker, who is the Administrative Remedies Coordinator ("ARC") for MacDougall.   Defs.' Ex. C, ECF No. 36-6, ¶ 3.   In that position, ARC Walker is the "Keeper of Records" for inmate administrative remedies, grievances, and appeals, including those related to property claims, and he maintains the grievance and property logs at MacDougall.   *Id.* ¶¶ 3, 4. Under A.D. 9.6, ARC Walker is required to, *inter alia*, "[e]nsure that notice and instruction regarding the Inmate Administrative Remedies Procedure is provided to each inmate during orientation," "that current administrative remedy forms are available in all housing units," and that "the current Administrative Directive 9.6, Inmate Administrative Remedies, is available in the library and to any inmate who requests it." A.D. 9.6(4)(a)–(c).   In addition, ARC Walker must "[e]nsure collection of administrative remedy forms is conducted each business day," maintain the "Inmate Grievance Distribution Log," and "[e]nsure that each CN 9602, Inmate Grievance Form-Level 1, is properly logged and routed for investigation and response."   A.D. 9.6(4)(d), (f), (g).

ARC Walker conducted a search of the MacDougall administrative remedies record for all of Plaintiff's grievance filings, including any property claims, between April 29, 2021, and June 29, 2022.   ECF No. 36-6, ¶¶ 17, 18.[6]   ARC Walker declares that this review showed that Plaintiff filed a single Level 1 Grievance (Grievance #137-21-231, dated May 18, 2021), and a single CN 9610, Lost/Damaged Property Investigation Form (Grievance # 137-0239, dated September 14,

---

[6] Plaintiff argues that the declarations submitted by ARCs Walker and Grandy should be deemed inadmissible because they are conclusory and rest on hearsay "because Walker and Gran[d]y are not the grievances coordinator assigned to the Plaintiff's claims."   ECF No. 39 at 21.   The Court rejects this argument.   The declarations are made on personal knowledge and are not based on hearsay.   In any event, a non-moving party may object to evidence provided in support of a summary judgment on the basis that the moving party would not be able to present the evidence in a form admissible at trial.   *See* Fed. R. Civ. P. 56(c)(2).   Unless ARCs Walker and Grandy are unavailable to testify at trial, they would be able to testify to the searches they conducted for grievances and the results of those searches, even if they were not assigned as the grievance coordinators for Plaintiff's claims.

2021) during that timeframe. *Id.* ¶¶ 18–20. ARC Walker's search did not return any other grievances or property claims filed by Plaintiff during the time period between April 29, 2021, and June 29, 2022. *Id.* ¶ 21.

### 1. Grievance #137-21-231

Plaintiff's Level 1 Grievance was dated May 18, 2021, and marked as received the next day on May 19, 2021. Defs.' Ex. C-2, ECF No. 36-6 at 21–23. This grievance concerned Plaintiff's missing property following his time in the RHU. *Id.* at 21. Plaintiff explained that his property had been transferred "accidentally to Osborn CI" with his former cellmate. *Id.* He complained that DOC staff was "not trying to retrieve all of [his] property[,] only his legal work and mail." *Id.* He asserted that he did "nothing wrong" and "should not have his property taken because of [DOC's] mistake." *Id.* He noted further that he had paid over five hundred dollars for "food, cloths, shoe[s], cosmetic[s]" and that "DOC should retrieve all [his] property not just [his] legal things." *Id.* In additional pages, Plaintiff also set forth the factual background concerning the "accidental[] transfer" of his property. *Id.* at 22. He explained, "This Grievance is being filed because [his former cellmate] accidentally was given my property and now he's trying to give it back but staff refuses to take it back." *Id.* He stated that, on May 20, 2021, "Property Officer Roble[]do" advised that he would receive two boxes returned from Osborn C.I. but that Officer Robledo did not "believe" the property boxes contained Plaintiff's "commy or legal mail because it wouldn't fit into the two boxes." *Id.* at 23. Plaintiff expressed that he "would like to know what happen[ed] to [his] legal mail," and requested to "get all [his] food commissary back." *Id.* Plaintiff also noted that as of May 22, 2021, he had received all his shoes and most of his clothing back, and that he was still awaiting his legal mail and food commissary items. *Id.* In the same update, he noted that his old cellmate had told his sister that prison staff

said that he would not be receiving his food commissary items back because they were perishable. *Id.*

Warden Barone rejected Plaintiff's Level 1 Grievance on June 28, 2021, stating: "[t]he proper avenue for filing property related matter is to file a CN9610 Lost/Damaged Property Investigation Form." *Id.* at 21.   The returned Level 1 Grievance form indicated that the decision rejecting Plaintiff's Level 1 Grievance was not subject to further appeal.   *Id.*

### 2.   *Lost/Damaged Property Investigation Form #137-0239*

Plaintiff's Lost/Damaged Property Investigation Form dated September 14, 2021, identifies his lost property as "Black under Armour Sneakers Size 10.5."   Defs.' Ex. C-3, ECF No. 36-6 at 27.   Plaintiff explains that he received a property inventory when he "went to seg," that he notified the officer about the missing sneakers, that the sneakers were still missing when his property was returned, and that Defendant Robledo advised that he would search for the sneakers and ask Plaintiff's former cellmate about them.   *Id.*

In a letter dated October 6, 2021, to Plaintiff, an ARC advised Plaintiff that his property matrix upon his release from the RHU showed he had two pairs of sneakers in his possession, which was the maximum number of pairs of shoes he was allowed to have under A.D. 6.10.   *Id.* at 26.

In support of their motion, Defendants have submitted the declaration of ARC Grandy, Keeper of Records for the DOC's Lost Property Board.   Defs.' Ex. D, ECF No. 36-7, ¶ 3.   Grandy avers he conducted a search of the property claims filed by Plaintiff during the period from April

29, 2021, to June 29, 2022, and determined that Plaintiff did not file any property claims with the

Lost Property Board during that timeframe.  *Id.* at ¶¶ 15, 16.[7]

      E.  <u>Plaintiff's Failure to Exhaust</u>

The Court concludes Defendants have shown Plaintiff did not exhaust his available

administrative remedies related to the claims that are proceeding in this suit alleging violations of

Plaintiff's Fourth and First Amendment rights.

First, to the extent Plaintiff asserts that his "first grievance," "speaking to wardens," and

sending of additional grievances "was more than enough to exhaust the administrative remedies

and figure out what … happened to th[e] commissary," Pl.'s Dep., ECF No. 39-3 at 42:1-5, 13-21,

Plaintiff is incorrect.   Informal efforts to put prison officials on notice of inmate concerns do not

satisfy the exhaustion requirement.  *See Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (holding

that "informal complaints and administrative tort claims" failed to exhaust administrative remedies

procedurally, even if they "put the prison on notice of the nature" of the inmate's grievance).   In

particular, an inmate's verbal complaints to DOC staff do not exhaust an administrative remedy

because DOC's grievance procedure under A.D. 9.6 sets forth several steps to exhaust a claim

through written grievances when verbal complaints do not resolve the issue.  *See Gómez v. Dep't*

*of Correction*, No. 3:20-CV-958 (JAM), 2022 WL 788261, at *4 (D. Conn. Mar. 15, 2022)

(holding that an inmate failed to exhaust where he did not "continue to pursue his verbal complaints

with written grievances according to the DOC's grievance procedure"); *see also Vidro v. Erfe*, No.

3:18-CV-00567 (CSH), 2019 WL 4738896, at *5 (D. Conn. Sept. 26, 2019) ("Even if the verbal

---

[7] While Plaintiff points out that ARC Grandy references two inmate numbers for him, it seems clear that use of the second number, 394603, is a typographical error, because Grandy uses the correct number, 392603, two lines earlier in the same paragraph, and one line later in the next paragraph.  *See* ECF No. 36-7, ¶¶ 15, 16.  Plaintiff has not provided reason to believe that that the apparent typographical error casts doubt on the exhaustiveness of ARC Grandy's search.

complaints had put prison officials on notice of the subject matter of Plaintiff's grievance, notice, in and of itself, cannot satisfy the exhaustion requirement.").    As previously explained, "proper exhaustion of administrative remedies … means using all steps that the agency holds out, and doing so *properly*" so that DOC can "address[] the issues on the merits[.]"   *Woodford*, 548 U.S. at 90 (emphasis in original).    And "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."   *Jones*, 549 U.S. at 218.

As for Plaintiff's written grievances, it is clear Plaintiff did not exhaust available remedies. DOC records demonstrate he pursued a Level 1 grievance in May of 2021 that directed him to file a CN9610 Lost/Damaged Property Investigation Form and noted it was not subject to further appeal.    No appeal could be taken of the Level 1 grievance because the grievance suffered from a procedural infirmity:    the appropriate method for pursuing a lost property claim was not a Level 1 grievance at all, but rather a CN9610 Lost/Damaged Property Investigation Form.    Here, because the remedy Plaintiff sought was the return of his property and the infirmities of his request could not be corrected except by filing a Lost/Damaged Property Investigation Form under the procedures set forth by Directive 9.6(9), a Level 2 appeal would have been improper.

The Court acknowledges that Plaintiff has submitted a copy of a Level 2 grievance appeal for his rejected Level 1 grievance 137-21-231, which is dated July 1, 2021.   *See* ECF No. 39 at 54.    The Level 2 appeal stated that the investigation "was not done right," and that he thought this was "the right avenue for filing property related matters."   *Id.*    He further stated that he needed help with return of his property because the corrections officers' actions caused the property "mix up."   *Id.*    This Level 2 grievance form, however, shows no date of receipt or disposition.    No evidence suggests that this Level 2 grievance was ever filed.    Even assuming it was filed, though,

a Level 2 appeal was procedurally improper the reasons explained above.   Thus, it cannot support Plaintiff's argument that he exhausted available administrative remedies.

Plaintiff's CN9610 Lost/Damaged Property Investigation Form filed in September of 2021 likewise did not exhaust administrative remedies because Plaintiff did not pursue all available appeals.   For matters relating to lost or damaged property, A.D. 9.6(9) first requires submission of a CN9610 form that attaches the CN 9601 Inmate Request Form.   A.D. 9.6(9)(b)(i).   If the issue is not resolved after submission of those forms, the inmate must proceed with filing a CN 9612 Property Claim with the Lost Property Board; if the Lost Property Board denies a claim in whole or in part, the inmate may, no later than 60 days after the decision, present the claim to the Office of the Claims Commissioner.   A.D. 9.6(9)(b)(ii), (f).   Here, Plaintiff's CN9610 Lost/Damaged Property Investigation Form related only to his missing sneakers, not to other property, such as legal mail; and even as to the sneakers, there is no evidence that he followed up with a CN9612 Property Claim Form to the Lost Property Board.   Plaintiff therefore did not properly exhaust administrative remedies, as required.   *See Woodford*, 548 U.S. at 90.

Moreover, in the Court's review, while Plaintiff's many submissions to prison officials[8] would have certainly alerted them to the fact of his missing property, they did not put them on notice of the constitutional claims he now raises in this suit.   As noted above, while an inmate need not "specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court," he must give prison officials notice "about the factual basis of his claims."   *Edwards*, 832 F. App'x at 53–54 (affirming district court's holding that inmate failed

---

[8] Plaintiff submitted materials earlier in this case suggesting that he filed other complaints related to his missing property on May 11, 2021; May 13, 2021; May 15, 2021; May 18, 2021; May 25, 2021; June 4, 2021; July 13, 2021; July 5, 2021; and October 12, 2021, in addition to the Level 1 grievance he submitted on May 18, 2021, and the CN9610 form he submitted relating to the Under Armour sneakers on September 14, 2021.   *See generally* ECF No. 22 (filed Oct. 12, 2023).

to exhaust retaliation and equal protection claims, where none of inmate's grievances asserted that the defendant "acted in a retaliatory manner or that DOC was applying the Directive in a discriminatory manner"). Indeed, with respect to retaliation in particular, a grievance that fails to identify a prison official's alleged retaliation does not exhaust administrative remedies for a First Amendment retaliation claim. *See Munger v. Cahill*, 792 F. App'x 110, 112 (2d Cir. 2020) ("But Munger did not specify that his medication was taken away because of a lie a nurse told in retaliation against him for an earlier complaint . . . Because Munger's grievances did not mention retaliation, Appellees were not on notice of Munger's complaint of retaliation by Nurse White."); *Baltas v. Rivera*, No. 3:19-cv-1043 (MPS), 2020 WL 6199821 at *10 (D. Conn. Oct. 22, 2020) (none of plaintiff's prior grievances had "alerted prison officials that the plaintiff was complaining that [defendants] had taken some action against him . . . because he had previously filed a grievance or engaged in other First Amendment-protected activity . . . Accordingly, the plaintiff has failed to exhaust his First Amendment retaliation claim").

To the extent that Plaintiff wished to pursue his concerns about staff infringement of his privacy in his legal communications, inability to access the courts, interference with his legal communications, or retaliation, Plaintiff could have filed a Level 1 Grievance that sought responsive action about such issues and staff misconduct. Here, the record reflects that Plaintiff failed to do so. None of the submissions Plaintiff made to prison authorities, including his Level 1 grievance and his CN9610 Lost/Damaged Property Investigation Form, alleged that Defendants Koza or Robledo inappropriately monitored or read Plaintiff's legal documents, or that they in fact destroyed or withheld such documents, such that he had to settle another civil case prematurely. Rather, such allegations were raised for the first time in Plaintiff's federal complaint in this action. *See* Compl., ECF No. 1-1 ¶¶ 47, 54. Nor did the submissions allege that Defendant Robledo had

retaliated against him for continuing to pursue the issue of his missing property through grievances and complaints. The Level 1 grievance afforded the prison no notice that Plaintiff sought more than a return of "all [his] property." *See* ECF No. 36-6 at 21. Likewise, Plaintiff's Lost/Damaged Property Investigation Form grieved only his lost sneakers and could not, therefore, have alerted prison officials about violation of his Fourth or First Amendment rights. *See* ECF No. 36-6 at 27. At best, construed liberally, Plaintiff's submissions may have alerted prison officials to his First Amendment claim of interference with his legal mail. But even then, his failure to procedurally exhaust this claim would bar it. Because Plaintiff failed to raise the constitutional issues he now asserts in his grievances, the correctional officials were not afforded the "opportunity to address complaints internally," before suit was filed in federal court. *Porter*, 534 U.S. at 525.

The Court is sympathetic to Plaintiff's frustration about his lost property and recognizes his efforts to notify prison officials of the issue through various means. But DOC has specific procedures in place to attempt to address lost property and staff misconduct, and strict compliance with these procedures is necessary before an inmate may pursue a suit in federal court, for reasons the United States Supreme Court has explained. *See, e.g.*, *id.* at 524–25. Plaintiff has not complied with these procedures.

Accordingly, the record clearly demonstrates that Plaintiff failed to administratively exhaust his Fourth and First Amendment claims before filing this suit.

F. Excusing Exhaustion

Having determined that Plaintiff has not exhausted the administrative remedies available to him, the Court considers whether there is a legal basis to excuse Plaintiff from this requirement. As mentioned above, the exhaustion requirement is excused when the grievance process operates as a simple "dead end," when the administrative scheme is "so opaque" that it becomes "incapable

of use," and when administrators thwart inmates seeking relief by means of "machination, misrepresentation, or intimidation."   *Ross*, 578 U.S. at 643–44.   These categories are not exhaustive.   *Rucker v. Giffen*, 997 F.3d 88, 93 (2d Cir. 2021). The Court concludes that the exhaustion requirement should not be excused.

First, even when all inferences are construed in Plaintiff's favor, the Court cannot find that the administrative remedy procedure was a dead end because officers were unable or consistently unwilling to provide him any relief.   Warden Barone's rejection of Plaintiff's first grievance as a misfiled property claim does not suggest that that grievance process acted as a dead end.   *See, e.g.*, *Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2024 WL 525594, at *9 (D. Conn. Feb. 9, 2024) ("That Warden Reis initially rejected Plaintiff's grievances for failure to state the particular relief requested and then two additional times on procedural grounds does not support the inference that the grievance process acted as a dead-end.").   Rather, the rejected grievance specifically directed Plaintiff to file CN9610 Lost/Damaged Property Investigation Form, opening the proper avenue for him to pursue his lost property claim.

Nor is the administrative scheme so opaque that it is incapable of use.   *See Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (summary order) (noting earlier version of A.D. 9.6 is "certainly rigorous in some respects" but "not so opaque as to be unavailable"); *Sanchez*, 2024 WL 525594, at *9.   And Plaintiff cannot claim that he was unaware of the proper grievance procedure.   Plaintiff admits to having read the handbook that summarizes the administrative remedy procedures "a few times."   Pl.'s Dep. at 43:14-15; *see* A.D. 9.6(5)(b)(ii) (providing each inmate shall be issued a written summary of Administrative Directive 9.6).

Likewise, the record raises no inference to support a claim that Plaintiff was thwarted from filing his administrative remedies for his constitutional claims proceeding in this matter.   Instead,

the evidence shows that Warden Barone and Defendant Robledo advised Plaintiff to pursue his lost property by filing a CN 9610 Lost/Damaged Property Investigation Form under the procedures of A.D. 9.6(9).   *See* ECF No. 36-6 at 21; ECF No. 36-4 ¶ 21; Robledo Interrog. Responses, ECF No. 39-3 at 17 ¶ 21.

Even construing all inferences in favor of Plaintiff as the non-moving party—and liberally construing his filings because he is proceeding *pro se*—the Court concludes that no genuine issues of fact exist about whether Plaintiff failed to exhaust administrative remedies and whether he should be excused from the exhaustion requirement.   Accordingly, the Court grants Defendants' motion for summary judgment in Defendants' favor on the grounds of non-exhaustion.   The Court need not reach Defendants' other arguments.

## V.    CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment, ECF No. 36, is GRANTED.   The Clerk is directed to enter judgment in Defendants' favor and close this case.

**SO ORDERED** at Hartford, Connecticut, this 20th day of March, 2025.

    */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE